IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

SUSANNE GIONET
2841 DEBARR RD. STE 20
ANCHORAGE, AK, 99508-2945,

   Plaintiff,

vs.

NANCY PELOSI in her official capacity as
Speaker of the United States House of
Representatives.
Office of the Speaker.
The U.S. Capitol. Suite H-232,
U.S. House of Representatives
Washington, D.C. 20515
Telephone: (202) 225-0100

  and

BENNIE G. THOMPSON, in his official
capacity as Chair of the Select Committee to
Investigate the January 6th Attack on the United
States Capitol.
Rayburn House Office Building Suite 2466
U.S. House of Representatives
Washington, D.C. 20515
Telephone: (202) 225-5876,

  and

ELIZABETH L. CHENEY, in her official
capacity as a member of the United States
House of Representatives.
Cannon House Office Building, Suite 416
U.S. House of Representatives
Washington D.C. 20515
Telephone: (202) 225-2311

  and

CASE NO: 1:22-CV-00610

1

ADAM B. SCHIFF, in his official capacity as a
member of the United States House of
Representatives
Rayburn House Office Building, Suite 2309
U.S. House of Representatives
Washington, D.C. 20515
Telephone: (202) 225-4176

     and

JAMIE B. RASKIN, in his official capacity as a
member of the United States House of
Representatives
Rayburn House Office Building, Suite 2242
U.S. House of Representatives
Washington, D.C. 20515
Telephone: (202) 225-5341

     and

SUSAN E. LOFGREN, in her official capacity
as a member of the United States House of
Representatives
Longworth House Office Building, Suite 1401
U.S. House of Representatives
Washington, DC. 20515
Telephone: (202) 225-3072

     and

ELAINE G. LURIA, in her official capacity as a
member of the United States House of
Representatives
Cannon House Office Building, Suite 412
U.S. House of Representatives
Washington, D.C. 20515
Telephone: (202) 225-4215

     and

PETER R. AGUILAR, in his official capacity as
a member of the United States House of
Representatives
Cannon House Office Building, Suite 109
U.S. House of Representatives

2

Washington, D.C. 20515
Telephone: (202) 225-3201

    and

STEPANIE MURPHY, in her official capacity
as a member of the United States House of
Representatives
Longworth House Office Building, Suite 1710
U.S. House of Representatives
Washington, D.C. 20515
Telephone: (202) 225-4305

    and

ADAM D. KINZINGER, in his official capacity
as a member of the United States House of
Representatives
Rayburn House Office Building, Suite 3635
U.S. House of Representatives
Washington, D.C. 20515
Telephone: (202) 225-3201

    and

SELECT COMMITTEE TO INVESTIGATE
THE JANUARY 6 ATTACK ON THE
UNITED
STATES CAPITOL
Longworth House Office Building
Washington, D.C. 20515
Telephone (202) 225-7800

    and

JOHN WOOD, in his official capacity as
Investigative Counsel for the Minority Members
of the House Select Committee to Investigate
the January Attack on the United States Capitol
Longworth House Office Building
Washington, D.C. 20515
Telephone: (202) 225-7800

    and

3

TIMOTHY J. HEAPHY, in his official capacity
as Chief Investigative Counsel for the House
Select Committee to Investigate the January 6
Attack on the United States Capitol
Longworth House Office Building
Washington, D.C. 20515
Telephone: (202) 225-7800

     and

VERIZON COMMUNICATIONS, INC.
Serve: General Counsel and Executive
Vice President Craig Silliman
1095 Avenue of the Americas
New York, NY 10036

     and

CELLCO PARTNERSHIP
d/b/a VERIZON WIRELESS
Serve: General Counsel
ATTN: VSAT
1 Verizon Way
Basking Ridge, New Jersey 07920
Telephone (908) 559-5490

            Defendants.

---

**COMPLAINT AGAINST THE HOUSE SELECT COMMITTEE TO INVESTIGATE
THE JANUARY 6 ATTACK ON THE UNITED STATES CAPITOL FOR INJUNCTIVE
AND DECLARATORY RELIEF OF SUBPOENA FOR PHONE RECORDS**

Plaintiff, Susanne Gionet, a natural person, at all times relevant herein a private citizen,

also a permanent resident of Anchorage, AK., appearing with counsel Thornley Law Firm, P.C.,

sues for declaratory judgment pursuant to Fed. R. Civ. P. 57 and 28 U.S.C.  § 2201, et seq., for an

injunction to invalidate and prohibit enforcement of two overly broad and unduly burdensome

subpoenas and pursuant to 18 U.S.C. § 2702, motions for relief under Fed. R. Civ. P. 57 for a

speedy resolution and emergency injunctive relief under Fed. R. Civ. P. 65 consistent with the declaratory judgment.  For her grounds, states as follows:

**INTRODUCTION**

1. Plaintiff, Susanne Gionet (hereinafter "Susanne"), a private citizen, comes forth with this complaint to request this Court invalidate and deny the enforcement of a subpoena from the Select Committee of the U.S. House of Representatives of the U.S. House of Representatives (the "Select Committee") issued to VERIZON without legal authority in violation of the Constitution of the United States.

2. The Select Committee illegally seeks to compel information from Verizon regarding two lines of service on Susanne's family plan.  The Select Committee lacks the lawful authority to demand such information it seeks to obtain.  Further the Select Committee seeks to violate protected privileged conversations such as attorney client privilege and marital privilege.

3. Susanne lives in Anchorage, AK. She is the account owner of a family plan with Verizon Wireless with multiple users.

4. Anthime Gionet (hereinafter "Anthime") is the son of Susanne and did use at least one of the lines from the family plan.

5. On December 10, 2020, Anthime was charged with a misdemeanor in Scottsdale Arizona and retained counsel for representation in Scottsdale City Court case number CR2020-016964.

6. Counsel had privileged communications with Anthime on his cell phone regarding his representation.

7. Shortly thereafter on January 6, 2020, Anthime attended a rally in Washington D.C. to document the happenings that would take place. He walked with many others to the Capitol where another permitted rally was to take place. Anthime had no intentions of disrupting Congress. Many individuals had taken down fences at the Capitol and had entered the building when he arrived at the Capitol.

8. Anthime has regularly documented rallies, protests, and demonstrations throughout his career in the media. January 6, 2020, was no exception. Anthime entered the Capitol along with several other media sources. His entire entry was documented via a live stream. During the live stream he repeatedly tells others not to break items or vandalize the Capitol.

9. Many of the liberal leaning media sources that also entered the Capitol were not charged with any crime, but Anthime was, despite his actions in conformity therewith others conducting the same or similar activity.

10. Additionally, counsel had privileged communications with Anthime after he left Washington D.C. on January 6, 2020.

11. Anthime is currently charged as a defendant in the U.S. District Court for the District of Columbia in case number 1:21-mj-00014.

**PARTIES**

12. Plaintiff Susanne Gionet is a private citizen.

13. Defendant Nancy Pelosi ("Speaker Pelosi") is a Democrat member of the U.S. House of Representatives and Speaker of the House.

14. Defendant Bennie G. Thompson is a Democrat member of the U.S. House of Representatives and serves as the Chairman of the Select Committee to Investigate

the January 6 Attack on the United States Capitol.  The subpoenas challenged herein were issued by his authority.

15. Defendant Elizabeth L. Cheney is a Republican member of the U.S. House of Representatives and member of the Select Committee to Investigate the January 6 Attack on the United States Capitol.

16. Defendant Adam B. Schiff is a Democrat member of the U.S. House of Representatives and a member of the Select Committee to Investigate the January 6 Attack on the United States Capitol.

17. Defendant Jaime B. Raskin is a Democrat member of the U.S. House of Representatives and a member of the Select Committee to Investigate the January 6 Attack on the United States Capitol.

18. Defendant Susan E. Lofgren is a Democrat member of the U.S. House of Representatives and a member of the Select Committee to Investigate the January 6 Attack on the United States Capitol.

19. Defendant Elaine G. Luria is a Democrat member of the U.S. House of Representatives and a member of the Select Committee to Investigate the January 6 Attack on the United States Capitol.

20. Defendant Peter R. Aguilar is a Democrat member of the U.S. House of Representatives and a member of the Select Committee to Investigate the January 6 Attack on the United States Capitol.

21. Defendant Stephanie Murphy is a Democrat member of the U.S. House of Representatives and a member of the Select Committee to Investigate the January 6 Attack on the United States Capitol.

22. Defendant Adam D. Kinzinger is a Republican member of the U.S. House of Representatives and a member of the Select Committee to Investigate the January 6 Attack on the United States Capitol.

23. Defendant Select Committee to Investigate the January 6 Attack on the United States Capitol ("Select Committee") is a select committee created by House Resolution 503 ("H. Res. 503") passed by the U.S. House of Representatives on June 30, 2021.

24. Defendant Verizon Communications, Inc. has been subpoenaed to provide subscriber data about Susanne Gionet to the Select Committee in its role as providing telecommunications services to its "subscriber" Mrs. Gionet.

25. Defendant CellCo Partnership d/b/a Verizon Wireless has been subpoenaed to provide subscriber data about Susanne Gionet to the Select Committee in its role as providing telecommunications services to its "subscriber" Mrs. Gionet.

## JURISDICTION AND VENUE

26. This Court has subject matter jurisdiction, pursuant to 28 U.S.C § 1331, as the subject matter of this action arise from the Constitution of the United States and the laws thereunder.

27. This Court also has jurisdiction pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to the claim that is the subject of the action, is situated is in Washington, D.C.

28.  This Court has personal jurisdiction over Nancy Pelosi because she, as the Speaker of the House of Representatives sponsored H. Res. 503 establishing the Select Committee

to Investigate the January 6 Attack on the United States Capitol oversaw the passage of such in the House of Representatives in Washington, D.C.

29. This Court has personal jurisdiction over Chairman Thompson because he presides over the Select Committee.  He also authorized and signed off on the Subpoenas from his office address in Washington, D.C.

30. This Court also has jurisdiction over Elizabeth L. Cheney, Adam B. Schiff, Jamie B. Raskin, Susan E. Lofgren, Elaine G. Luria, Peter R. Aguilar, Stephanie Murphy, and Adam D. Kinzinger as members of the Select Committee that issued the Verizon Subpoenas from Washington, D.C.

31. This Court has personal jurisdiction over the Select Committee because it is located and operates in Washington, D.C.

32. This Court has personal jurisdiction over the Verizon Defendants as it has operations within Washington, D.C.  Verizon also has subscribers and equipment such as towers in Washington, D.C.  Verizon also advertises service throughout the United States, including Washington D.C.

**RELEVANT FACTS**

The facts incorporated herein are relevant to all counts and shall be incorporated within each count as if restated in each count.

33. On January 6, 2020, a rally was held and a large number of protestors attended along with media and counter protestors.  Some protestors entered the United States Capitol building by force.  Some entered peacefully unaware force was previously used.  Some entered to document the activities the proceeded to take place that day.

9

34. The Department of Justice has selectively chosen to arrest those were present on the Capitol grounds regardless of whether they entered the Capitol building or not.

35. Under information and belief some "Protestors," such as Ray Epps, led the charge (so to speak) and directed people to go into the Capitol.

36. Ray Epps has never been charged regardless of his participation clearly caught on camera by Anthime Gionet as well as other individuals.

37. Over 725 people have been arrested for storming the Capitol building or some related activity on January 6, 2020.

38. Selective arrests started within several days after January 6, 2020.

39. Susanne was notified on February 15, 2022, from Verizon that her phone records and requested information would be turned over to the Select Committee unless it received "a court document challenging the subpoena by February 28, 2022.

40. Susanne neither attended the rally on January 6, 2021, nor was she even in Washington, D.C. on that date.

41. The Verizon subpoena, issued by the Select Committee on February 1, 2022, instructs Verizon to produce subscriber information and cell phone data associated with phone numbers on Susanne's family plan.  The requested data includes all detailed logs of calls, texts, metadata, email information and larger records of communication for the numbers.  The data requested can be used to track movement through cell site location information ("CSLI").

I.     THE SELECT COMMITTEE'S VERIZON SUBPOENAS VIOLATES THE FORTH AMENDMENT TO THE UNITED STATES CONSTITUTION

42. The Verizon Subpoenas directs Verizon to produce subscriber information and data associated with the account.

43. The requested information includes all subscriber information, connection records and records of session time and durations as well as all metadata for the phone numbers, including:

**SUBSCRIBER INFORMATION**

a.   Name, subscriber name, physical address, billing address, e-mail address, and any other address and contact information;

b.   All authorized users on the associated accounts;

c.   All phone numbers associated with the accounts;

d.   Length of service (including start date) and types of service utilized;

e.   Telephone or instrument numbers (including MAC addresses), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobil Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number (MSISDN"), International Mobil Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI") associated with the accounts;

f.   Activation date and termination date of each device associated with the accounts;

g.   Any and all number and/or account number changes prior to and after the account was activated;

11

    h.  Other subscriber numbers or identities (including temporarily assigned network addresses and registration Internet Protocol ("IP" addresses); and

## CONNECTION RECORDS AND RECORDS OF SESSION TIMES AND DURATIONS:

    a.  All call, message (SMS & MMS), Protocol ("IP"), and data-connection detail records associated with the Phone Numbers, including all phone numbers, IP addresses or devices that communicated with the Phone Number via delivered and undelivered inbound, outbound, and routed calls, messages, voicemail, and data connections.

## THE SELECT COMMITTEE REQUESTS ALL METADATA

    a.  BEGDOC, ENDDOC, TEXT, BEGATTACH, ENDATTACH, PAGECOUNT, CUSTODIAN, RECORDTYPE, DATE, TIME, SENTDATE, SENTTIME, BEGINDATE, BEGINTIME, ENDDATE, ENDTIME, AUTHOR, FROM, CC, TO, BCC, SUBJECT, TITLE, FILENAME, FILEEXT, FILESIZE, DATECREATED, TIMECREATED, DATELASTMOD, TIMELASTMOD, INTMSGID, INSMSGHEADER, NATIVELINK, INTFILPATH, EXCEPTION, BEGATTACH.

44. The Fourth Amendment enumerates the right of private citizens to be free from unreasonable searches and/or seizures by the government into their persons, houses, papers, and effects.  Additionally, a person is entitled to a reasonable expectation of privacy.  *Katz v. United States*, 389 U.S. 347, 351 (1967). In fact, "The Fourth Amendment serves primarily to protect the right to privacy.  *Senate Select Committee*

*on Ethics v. Packwood*, 845 F.Supp. 17, 21 (D.D.C. 1994). *See also Carpenter v. U.S.*, 138 S.Ct. 2206, 2213 (2018).

45. Here, in this case the Select Committee seeks to bypass the traditional safeguard of needing and obtaining probable cause and a warrant and in doing so skirts the rights of United States Citizens to be free from the invasion of privacy as afforded by the Fourth Amendment.  Sensationally, the Select Committee operates, not just above the law, but above the Constitution of the United States bypassing all safeguards put in place by the founding fathers specifically to prohibit such abhorrent actions.  "The [f]ounding generation crafted the Fourth Amendment as a "response to the reviled 'general warrants' and 'writs of assistance' of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity." *Id*.

46. The Select Committee has not been granted a warrant for the requested information. Instead, the Select Committee acts as the British officers of the colonial era, rummaging through cell data in what one can only imagine is for evidence of criminal activity.

47. Further, the government has proffered no reasonable need for the cell data subpoenaed. There has been no showing of the importance of governmental interests alleged to justify this intrusion. *Packwood* at 22.  Additionally, one does not automatically surrender Forth Amendment protection just because information is held by a third party. *Carpenter* at 2217.

48. The Fourth Amendment does not allow for unfettered ability of the Select Committee to issue a sweeping subpoena untethered from any valid legislative purpose.  See *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186 196 (1946).

## II.     THE SELECT COMMITTEE'S SUBPOENA VIOLATES PRIVILEGED ATTORNEY- CLIENT COMMUNICATIONS

49. The Select Committee has Subpoenaed information and cell records which would violate attorney-client privilege.  "The attorney-client privilege is one of the oldest recognized privileges for confidential communications. *Swidler & Berlin v. U.S.*, 118 S.Ct. 2081, 2084 (1998).  The privilege is so resolute that our courts have consistently ruled that it survives death. *Id* at 2085.  The privilege should not be abridged in this situation.  Especially so given that a criminal case is still pending for Anthime in the Federal District Court for the District of Columbia.  "A 'no harm in one more exception' rationale could contribute to the general erosion of the privilege, without reference to common-law principles or 'reason and experience.'" *Id* at 2087.

50. Here, The Verizon Subpoena requests records from November 1, 2020, through to January 31, 2021.  Anthime had a pending criminal matter in an Arizona court throughout the duration of the requested records by the Select Committee.  The matter remains pending on appeal.  It is long established, "[T]he privilege encourages clients to make 'full and frank' disclosures to their attorneys, who are then better to provide candid advice and effective representation.  This, in turn, serves 'broader public interests in the observance of law and administration of justice.'" *Mohawk Industries v. Carpenter*, 130 S.Ct. 599, 606 (2009).

51. Here also, Anthime's additional criminal case enumerated herein is still pending before the Federal Court of the District of Columbia.  The violation of Anthime's attorney-client privilege would have a chilling and far-reaching effect for the observance of law and the lawful administration of justice.

14

### III.   THE VERIZON SUBPOENA AND COMPELLED PRODUCTION OF DATA VIOLATES THE FIRST AMENDMENT

52. The data requested in the Verizon subpoena is all encompassing and discloses who spoke to whom and on what dates and time along with many other data points.

53. Mrs. Gionet is a private citizen and the information requested is private in nature.

54. The subpoena of Mrs. Gionet's private cell phone data violates her right to free association and a suppressive effect of her free speech rights.

55. Additionally, as mentioned herein, Anthime Gionet used at least one of the phones to engage in privileged discussions with his attorneys.

56. The phones were also used to engage in private conversations with friends and family.

57. All of the accompanying acts are speech protected by the First Amendment.  See *Buckley v. Valeo*, 424 U.S. 1, 64 (1976).

58. Free speech as protected under the constitution cannot be abridged.  In this instance the Select Committee has no genuine or lawful purpose for seeking the protected information as insisted in the Verizon Subpoena.

59. Further, the time frame for which the Select Committee seeks to subpoena records is far outside the boundaries of the event that took place at the Capitol on January 6, 2021.

60. Also, the phones were impounded by the FBI at the time of Anthime Gionet's arrest. What possibly could come from the data requested from the period of his arrest to January 31, 2021, as the subpoena demands.

61. Neither is there a reason to believe nor is there a reason given that the data requested will fulfill the scope and purpose of the Select Committee and additionally violates Mrs. Gionet's and Anthime Gionet's rights to free speech.

## IV.    THE VERIZON SUBPOENAS ARE WITHOUT LAWFUL AUTHORITY

62. The Select Committee must have consent from Susanne to obtain the data requested. Susanne has not given and will not give consent for the records requested in the Verizon Subpoena.

63. H. Res. 503(2)(a) states, "Appointment Of Members—The Speaker shall appoint thirteen members to the Select Committee, five of whom *shall* be appointed after consultation with the minority leader." (emphasis added).

64. Speaker Pelosi failed to fulfill the H. Res. 503 Sec. 2(a) by refusing to select all thirteen members.  Specifically, Speaker Pelosi failed to fill five positions and instead chose the only two republicans who voted for the resolution, Adam Kinzinger and Elizabeth Cheney and seven democrats.

65. To date there are only nine members appointed of the thirteen despite the resolution requiring 13 members.

66. Further, Speaker Pelosi failed to ever consult with the Minority Leader Kevin McCarthy.  Therefore, the Subpoenas are not issued by a duly authorized committee as the Select Committee itself has not been fully established in accordance with the resolution passed by the House of Representatives. H. Res. 503 117th Cong. (2021).

67. Chairman Thompson of the Select Committee derives his capacity to subpoena from H. Res. 503 Sec. 5(c)(6) of the Select Committee's authorizing statute only if the Select Committee is and has been established according to the House Resolution that

16

made it so.  Additionally, Chairman Thompson may only issue a subpoena upon

consultation with the ranking minority member.

68. The Select Committee has no Ranking Minority Members.  Therefore, any

subpoena's issued are done so in violation of the House Resolution and invalid.

69. The issuance of the Verizon subpoenas in this instance runs afoul of the Select

Committee's authorizing resolution, making it illegal and unenforceable.


**V.    THE VERIZON SUBPOENAS ARE OVERBROAD AND SERVE NO LEGISLATIVE PURPOSE**

70. To be sure, it is widely known that the events that took place on January 6, 2020, are

what gave rise to the Select Committees establishment.

71. However, the Select Committee seeks an overly broad stretch of dates in the Verizon

Subpoenas from November 1, 2020, to January 31, 2021.

72. The purpose of the Select Committee is to create report(s) about how to prevent an

event such as that of January 6, 2020, from occurring again.  There is no discernable

reason that broad cell data as requested in the Verizon subpoena would further the

purpose of the Select Committee even if it were lawfully obtained.

73. Hundreds of Subpoenas have issued for the same or similar data to be obtained from

other individuals through Verizon with no clear reasoning as to exactly what the

Select Committee seeks or expects to find from the records.

74. The Verizon Subpoenas requested breadth and depth of information is akin to a

impermissible fishing expedition with no clear purpose except to harass citizens in

violation of several Constitutional and statutory laws as further discussed herein.

17

75. Subpoenas are "not intended to provide a means of discovery."  *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 124 S. Ct. 2576, 2590 (2004).  Yet here, it is evident that despite the established precedent, the Select Committee seeks to use the subpoena as a tool for discovery.

76. Additionally, standards necessary to support a subpoena request lie with the party requesting the information. *Id.*

77. No reasons for the broad and sweeping subpoenas have been given, therefore the Select Committee has failed to meet their burden.

## VI.   THE STORED COMMUNICATIONS ACT PROHIBITS DISCLOSURE SUCH THAT THE SELECT COMMITTEE SEEKS

78. The Stored Communications Act prohibits entities from being forced to turn over content of messages to Congress.

79. The Stored Communications Act largely provides that "a person or entity providing electronic communication service to the public shall not knowingly divulge to any person or entity the contents of the communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1).

80.  It appears the Select Committee is seeking production of the data so that they may later subpoena testimony to fill in the content of which is prohibited. Zachary Cohen, Jamie Gangel, Katelyn Polantz and Ryan Nobles, Exclusive: January 6 committee casts a wide net with over 100 subpoenas for phone records. January 6 committee casts a wide net with over 100 subpoenas for phone company records - CNNPolitics.

81. Here, Verizon is "a person or entity providing electronic communication services to the public" within the meaning and purpose of the Stored Communications Act.  Therefore

Sec. 2702(a)(1) prohibits Verizon from disclosing "the contents of a communication" stored by Verizon to the Select Committee absent an express statutory exception as outlined in Sec. 2702(b).

82. Also here, there are neither any statutory exceptions in Sec. 2702(b) that apply to the Select Committee's subpoena, nor are there in Sec. 2702(c).

83. As previously stated herein, the Select Committee does not have lawful consent from Mrs. Gionet to obtain the subpoenaed records and there are no valid exceptions.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Court to enter judgment in her favor and against Defendants and to order the following relief:

a. A declaratory judgment the Verizon Subpoenas are unlawful and therefore unenforceable;

b. A declaratory judgment the Verizon Subpoenas serve no valid legislative purpose and exceeds the Select Committee's lawful authority;

c. A declaratory judgment that the Verizon Subpoenas violate Anthime Gionet's attorney-client privilege;

d. A declaratory judgment that compliance with the Subpoena would violate the Stored Communications Act;

e. A declaratory act that the subpoenas violate Mrs. Gionet's Due Process right to privacy protected by the Fourth Amendment;

f. A declaratory judgment that if the committee has any information or other subpoenas that information must be made available to opposing counsel;

g. A declaratory judgment that the committee must reveal how they received the number they seek to subpoena information for.

h.  An injunction quashing the Subpoenas and prohibiting Verizon from producing any data requested by the Select Committee;

i.  An injunction prohibiting the Select Committee from reviewing, inspecting, storing, or disclosing any data already submitted and requiring the return of such data if it so exists;

j.  An injunction prohibiting Defendants from imposing sanctions on either Mrs. Gionet or Verizon for noncompliance with the Subpoena;

k.  An award in favor of Plaintiff for her reasonable expenses, including attorney's fees and costs, incurred as a result of the issuance of the Verizon subpoenas; and

l.  Any and all additional relief the Court deems just and proper.

Dated this 4th day of March 2022.

/s/ Juli Z. Haller
Juli Z. Haller, DC 466921
The Law Offices of Julia Haller
601 Pennsylvania Avenue, N.W.
S. Building, Suite 900
Washington, DC 20004
Telephone: (202) 729-2201
HallerJulia@outlook.com

/s/ Zachary J. Thornley
Pending Pro Hac Vice Admission

Zachary J. Thornley 032363
Thornley Law Firm, PC
18441 N. 25th Ave., Suite 103
Phoenix, AZ 85023
Phone (602) 686-5223
Fax (928) 433-5909
Courts@ThornleyLawFirm.com
Attorney For Plaintiff

Pending Pro Hac Vice Admission