**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SUSANNE GIONET,

Plaintiff,
vs.

NANCY PELOSI, et al.,

Defendants.

CASE NO: 1:22-CV-00610-CJN

## <u>PLAINTIFFS RESPONSE IN OPPOSITION TO<br>DEFENDANTS' MOTION TO DISMISS</u>

Plaintiff, Susanne Gionet, files this memorandum in opposition to the Motion to Dismiss filed by the Defendants in this action.   Plaintiff respectfully requests this Court deny the Defendant's motion for the reasons in the Complaint as well as this accompanied memorandum in opposition to Defendant's motion.   Plaintiff's memorandum follows.   Plaintiff respectfully requests Oral Argument on this motion.  A Proposed Order is attached.

1

Respectfully submitted,


/s/ Zachary J. Thornley_____
Pro Hac Vice Admission
Lead Counsel

Zachary J. Thornley, AZ 032363
Thornley Law Firm, P.C.
18441 N. 25th Ave., Suite 103
Phoenix, AZ 85023
Phone: (602) 686-5223
Fax:    (928) 433-5909
Courts@ThornleyLawFirm.com
Attorney For Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SUSANNE GIONET,

Plaintiff,

vs.

NANCY PELOSI, et al.,

Defendants.

CASE NO: 1:22-CV-00610-CJN

## PLAINTIFFS MEMORANDUM IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………ii.

INTRODUCTION……………………………………………………………………..1

BACKGROUND………………………………………………………….………..2

    A.  The January 6th Committee…………………………………………………...2

    B.  Political Theatre and Drama……………………………………………………2-3

ARGUMENT……………………………………………………………………..4

    A.  Plaintiff's Pleading Contains Claims Entitling Her To Relief……………....……4-5

        i.      Fourth Amendment Violation…………………………………………….5-7

        ii.     The Subpoena Is Overbroad…………………………………………..7-10

        iii.    The Select Committee Does Not Have The Power It Purports To Have.10-12

        iv.    Mrs. Gionet Will Suffer A Violation Of Her First Amendment Rights…12-16

        v.     Federal Law Prevents Disclosure Of Content Subpoena Seeks………….16-17

CONCLUSION……………………………………………………………………….17

i

# TABLE OF AUTHORITIES

<u>Cases</u>

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ……………………………………………..8,9

*Buckley v. Valeo*, 424 U.S. 1, 15 (1976) …………………………………...……………19,20

*Carpenter v. U.S.*, 138 S.Ct. 2206, 2214 (2018) ………………………..……………10,11

*Eastland v. U.S. Serivcemen's Fund*, 421 U.S. 491, 508 (1975) …………………...……18

*In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp.2d 606, 611 (E.D. VA. 2008) ….14

*McPhaul v. United States*, 364 U.S. 372 (1960) …………………………………..….…10

*Riley v. California, 573 U.S. 373, 403 (2014)* ……………………………………….11

*United States v. Rostenkowski*, 59 F.3d 1291, 1305 (D.C. Cir.), opinion supplemented
on denial of reh'g, 68 F.3d 489 (D.C. Cir. 1995) ……………………………………….14,16

*U.S. v. Smith*, 52 S.Ct. 475, 478 (1932) …………………………………………………16


<u>Constitution & Statutes</u>

U.S. Const., Art. 1 § 5, cl. 2 …………………………………………………..15

18 U.S.C.A. §§ 2701 *et seq.* ………………………………………………………..20

18 U.S.C.A § 2702(c)(4) …………………………………………………………….....20

18 U.S.C.A. § 2703(c)(A) and (c)(E)(2) ………………………………………...………21

18 U.S.C.A. § 2702(c)(6) ……………………………………………………………..21


<u>Legislative Sources</u>

H. Res. 503 § 2(a), 117th Cong. (2021) ……………………………...…………….……15

H. Res 503 § 3(1), 117 th Cong. (2021) ……………………...…………………...16

H. Res. 503 § 3(1-3), 117 th Cong. (2021) …………………………...……………….18

Other Authorities

Cheney Booted from Republican leadership spot.  By Melanie Zanona and Olivia Beavers. Politico. https://www.politico.com/news/2021/05/12/liz-cheney-removed-leadership-position-487522 ....................................................................................................................14

Cheney loses primary after becoming face of GOP opposition to Trump. By Olivia Beavers and Zach Montellaro. Politico. Aug. 16, 2022., https://www.politico.com/news/2022/08/16/wyoming-alaska-primary-results-2022-00052216 ....................................................................................................................15

Defs.' Mot. n.23……………………………………………………………………....……..16

Ex-Capitol Police Chief Says Requests For National Guard Denied 6 Times In Riots. By Jaclyn Diaz. NPR. https://www.npr.org/2021/01/11/955548910/ex-capitol-police-chief-rebuffs-claims-national-guard-was-never-called-during ri ..........................................................................13

Former Trump aide Peter Navarro indicted for contempt of Congress in defying Jan. 6 Capitol probe subpoena, By Dan Mangan, June 4, 2022, CNBC, https://www.cnbc.com/2022/06/03/former-trump-aide-peter-navarro-indicted-for-contempt-of-congress-in-defying-jan-6-capitol-probe-subpoena.html ....................................................7

Faraday Cage: What Is It? How Does It Work, Gamry Instruments, https://www.gamry.com/application-notes/instrumentation/faraday-cage/..........................16

Inside the Capitol Riot: An Exclusive Video Investigation, by unknown, June 30, 2021, New York Times, https://archive.ph/eDlzs#selection-423.0-423.57 ……………………………17

Kinzinger retiring from Congress, vows 'broader fight nationwide' against Trumpism. By Ally Mutnick, Olivia Beavers, and Quint Forgey. Politico. Oct. 29, 2021. https://www.politico.com/news/2021/10/29/rep-adam-kinzinger-wont-seek-reelection-next-year-517599 ....................................................................................................................15

Meet Ray Epps, Part 2: Damning New Details Emerge Exposing Massive Web Of Unindicted Operator At The Heart Of January 6, by Darren Beattie, December 18, 2021, Revolver News, https://www.revolver.news/2021/12/damning-new-details-massive-web-unindicted-operators-january-6/ …………………………………………………………………………..…17

Meet Ray Epps: The Fed-Protected Provocateur Who Appears To Have Led The Very First 1/6 Attack On The U.S. Capitol, By Darren Beattie, October 25, 2021, Revolver News, https://www.revolver.news/2021/10/meet-ray-epps-the-fed-protected-provocateur-who-appears-to-have-led-the-very-first-1-6-attack-on-the-u-s-capitol/ …………………………………….17

Rep. Adam Kinzinger slams House Minority Leader Kevin McCarthy's leadership in GOP, says somehow 'the crueler you are, the more likely you are to win a primary.' By Pocharapon Neammanee. Aug. 8, 2022. https://www.insider.com/kinzinger-slams-house-minority-leader-kevin-mccarthys-leadership-2022-8 ....................................................................................14

Steve Bannon found guilty on both contempt of Congress charges, By Carrie Johnson July 22, 2022, NPR, https://www.npr.org/2022/07/22/1112937587/steve-bannon-guilty-jan-6-committee-contempt-charges .............................................................................................................7

Video shows fatal shooting of Ashli Babbitt in the Capitol, ByJon Swaine, Dalton Bennett, Joyce Sohyun Lee and Meg Kelly, Washington Post, January 8, 2021, https://www.washingtonpost.com/investigations/2021/01/08/ashli-babbitt-shooting-video-capitol/.............................................................................................................................7

## I.    __INTRODUCTION__

Ms. Gionet has a Constitutional right not to have interference in her daily activities or privacy.  U.S. Cont. Amend IV.  Defendants rest a great deal of their argument on addressing their concern with Anthime Gionet.  Yet Defendant's subpoena is not for Mr. Gionet's phones.  Instead, they seek to interfere with the constitutional rights of a third party, Mrs. Gionet.  Defendants assert that they are entitled to data on subscriber information, connection records, and records of session times and durations of calls from November 1, 2020, through January 31, 2021, yet assert no reasonable link or authority for their "entitlement."

Additionally, despite prior rulings that congressional subpoenas are valid, there is no authority provided in the constitution for such power.  For this reason, subpoena power should be closely checked by the judicial branch to prevent miscarriages of justice and to provide a check on the unbound power of an overzealous partisan committee formed purely for political reasons to harass their opposition.  In other words, the subpoena is a sham.

Mrs. Gionet has never been charged with any criminal activity and has lived an exemplary life of servitude and faith to God.  She has always been a productive member of our collective community.  Anthime Gionet was charged and has since pled guilty to misdemeanor picketing inside the Capitol.  The FBI took all electronics he had on him at the time he was arrested.

The Select Committee does not explain how the records they seek would help them to fully understand January 6, 2021.  Neither do they explain how the records they seek would help them to recommend measures to prevent a recurrence of a January 6th like event.  Instead, the revealing nature of what they seek can only be viewed as a "fishing expedition" of which our courts have generally frowned upon in all facets of law as impermissible.

II.     **BACKGROUND**

A.  **The January 6th Committee**

House Resolution 503 passed the house June 30, 2021, entirely on party lines.  The House

Select Committee to Investigate the January 6th Attack on the United States Capitol was formed

roughly six months after the January 6th protest.  The committee was unable to be formed according

to Resolution 503 due to the extreme partisan nature of those in charge of forming it.

B.  **Political Theater and Drama**

The Committee has since hired professional television producers to create a reality show

like production at taxpayer's expense.[1]  The committee has brought in witnesses with agendas of

their own who are willing to say things that please the Committee. Despite differing opinions about

the protest that took place on January 6, 2021, the Defendants have yet to have one before their

production crew.

The Committee has refused to bring in witnesses who do not fit the narrative they wish to

portray.  The Committee has used its power to attack anyone who disagrees with their narrative.

The Committee has used its power to create a secondary prosecution like platform seeking criminal

charges for those who do not comply, skirting the Department of Justice.[2][3]

---

[1] The committee hired a TV executive to produce the hearings for maximum impact, By Annie
Karni, June 9, 2022, The New York Times, https://www.nytimes.com/2022/06/09/us/the-
committee-hired-a-tv-executive-to-produce-the-hearings-for-maximum-impact.html.
[2] Steve Bannon found guilty on both contempt of Congress charges, By Carrie Johnson July 22,
2022, NPR, https://www.npr.org/2022/07/22/1112937587/steve-bannon-guilty-jan-6-committee-
contempt-charges
[3] Former Trump aide Peter Navarro indicted for contempt of Congress in defying Jan. 6 Capitol
probe subpoena, By Dan Mangan, June 4, 2022, CNBC,
https://www.cnbc.com/2022/06/03/former-trump-aide-peter-navarro-indicted-for-contempt-of-
congress-in-defying-jan-6-capitol-probe-subpoena.html

Just as the January 6th Committee has aspired to late night talk show greatness with the television productions, it is also evident that the events of the day are greatly dramatized. The committee cites the preamble to H. Res. 503, stating that rioters "launched an assault on the United States Capitol." Further, and with dishonesty to this Court they state, "the attack on the Capitol ultimately left multiple people dead."   In truth, one unarmed Trump supporter was shot to death inside the Capitol building. This is the only death connected to the protest on January 6th, 2021.[4] Liberal news sources have scrupulously attempted to connect attenuated deaths to the day but have failed to make any direct connection.

The Defendants now argue that within the Select Committee resides unfettered power to seize private citizens constitutionally protected information.  Here, the Defendants request is to search the private information found in the cellular company with which Mrs. Gionet has a family plan.  The Defendants seek emails, addresses and other contact information.  They seek user information, service dates, as well as information relating to when and where calls were made or received.  Additionally, the request is for connection records, session times and durations, all call, SMS, internet protocol and data connection detail records.  All deeply personal information not available to the public.

---

[4] Video shows fatal shooting of Ashli Babbitt in the Capitol, ByJon Swaine, Dalton Bennett, Joyce Sohyun Lee and Meg Kelly, Washington Post, January 8, 2021, https://www.washingtonpost.com/investigations/2021/01/08/ashli-babbitt-shooting-video-capitol/.

### III.   <u>ARGUMENT</u>

Unchecked subpoena power is not a guarantee under the constitution.  This Court should deny the Defendant's request for unlimited power to violate United States Citizen's Constitutional rights.

### A.  PLAINTIFF'S PLEADING CONTAINS CLAIMS ENTITLING HER TO RELIEF

Under Fed. R. Civ. P, 8(a) a pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction…(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Here, jurisdiction is well established in Mrs. Gionet's complaint.  The complaint contains grounds for the court's jurisdiction where it has noted that the issues raised arise under the U.S. Constitution.  *See* Compl. ¶ 26.  Further, as noted in the complaint, a substantial part of the matter arises withing the jurisdiction and geographic location of Washington D.C.  *Id*. ¶ 27.  Finally, this Court has jurisdiction over the Select Committee because the United States Capitol is located in Washington D.C.  *Id*. ¶ 28.

Also here, the complaint contains a short plain statement of the claim showing Mrs. Gionet is entitled to relief.  *See*. Compl.  Mrs. Gionet has alleged factual matter beyond sufficient to survive a motion to dismiss. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

4

at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*. The Court must accept all factual allegations in the complaint as true. *Id*.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id*. at 679.

Here, Mrs. Gionet faces real and imminent threats to her First and Fourth Amendment rights.  Mrs. Gionet's right to freely associate is tampered with when the government seeks out private information that identifies friends, acquaintances, or other parties purportedly for the purpose of then contacting those parties. See Defs.' Mot. p.14 (The Defendants admit wanting call detail records relating to both phones they believe to be associated with Mr. Gionet).

Further, Mrs. Gionet's Fourth Amendment rights are trampled on in violation to the United States Constitution when government is allowed to reach into private data created from a cell phone account.  Our courts have ruled that cell phone privacy must be protected with the utmost veracity. *See* infra *Carpenter* p.10.  Government overreach into private citizens personal information and data should be scrutinized closely and sharply.

## i.   FOURTH AMENDMENT VIOLATION

Here, there is no dispute between the parties that the subpoena the Defendants seek to execute seeks private and personal data not available to the general public.  The Defendants do not dispute that the entirety of the data they seek is listed in Mrs. Geonet's Complaint.  *See*. Compl. ¶ 43.  Ironically, the Defendants cite *McPhaul v. United States*, 364 U.S. 372 (1960), a case that was decided during a time when the government usurped its powers to go arrest alleged communists.

To be sure, *McPhaul*, standing alone, does address a Congressional Committee's ability to subpoena, however *McPhaul* states that, "Adequacy or excess in the breadth of the subpoena are matters variable in relation to the nature, purposes and scope of the inquiry." *McPhaul* at 382. (Foreclosing on unfettered limitless power to subpoena any and all that a Congressional Committee desires).

The Select Committee has failed to provide sufficient information as to how the vast trove of information requested fits within the inquiry at issue. In fact, the Select Committee has provided no information at all as to how the information demanded in the Subpoena furthers the Defendants purposes. The Defendants have only been able to make general statements that because Mr. Gionet was at the Capitol, they are guessing he may have spoke with others. The key word is guessing. Defendants make no assertions of any specific knowledge Mr. Gionet used his phones as a Trump ally. See Defs.' Mot. p.16.

Further, since *McPhaul*, the world has changed, and along with it, the law. Privacy issues have been front and center for many courts, including the United States Supreme Court due to the prolific use of electronics and in particular, cell phones. The Fourth Amendment, "seeks to secure 'the privacies of life' against 'arbitrary power.'" *Carpenter v. U.S.*, 138 S.Ct. 2206, 2214 (2018). The court further stated, "We have kept this attention to Founding-era understandings in mind when applying the Fourth Amendment to innovations in surveillance tools. As technology has enhanced the Government's capacity to encroach upon areas normally guarded from inquisitive eyes, this Court has sought to 'assure preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted.'' *Id*. The information sought from the Select Committee here is far overbroad and intrusive. The information demanded in the subpoena has no logical connection to the purported scope of the Select Committees purposes.

6

To be sure, the court in *Carpenter* protected the disclosure of cell site location information. However, even a basic reading of Carpenter reveals the Supreme Courts concerns with the loss of privacy with respect to cell phones and made broad statements about United States citizens Fourth Amendment rights, "The basic purpose of this [Fourth] Amendment, our cases have recognized, 'is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.' *Id* at 2213.  The Supreme Court recognized with great concern the potential for Fourth Amendment violations such as what is happening in this case.  "The Founding generation crafted the Fourth Amendment as a 'response to the reviled general warrants and writs of assistance of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity. *Id*. (citing *Riley v. California*, 573 U.S. 373, 403 (2014)) (*Riley* stating the fact that opposition to such searches was in fact one of the driving forces behind the Revolution itself.  Referring to the American Revolution).   *Carpenter* was not just about CSLI. In fact, it is easily recognizable that the message in Carpenter was that government invasions are reviled.  Carpenter tells us that we did not tolerate these types of invasions during the colonial era and we equally detest the very "rummaging" happening today in this very matter.

## ii.      THE SUBPOENA IS OVERBROAD

The Select Committee is insincere in their pleading.  There is a stark disconnect between what the Defendants proffer in their pleading and what the subpoena in fact calls for.  In the Defendant's Motion to Dismiss they state, "His mother is trying to block a subpoena issued by the House Select Committee to Investigate the January 6th Attack of the United States Capitol to Verizon seeking subscriber information, connection records, and records of session times and durations of calls from November 1, 2020, through January 31, 2021, for phone numbers associated with him." *See* Defs.' Mot. at p.1.  In truth, the subpoena demands information far

outside the bounds of the dates mentioned.  For instance, the Subpoena demands the, "Length of service (including start date) and types of service utilized."  *See* Subpoena Schedule § A[5].  Further the request if for, "Activation date and termination date of each device associated with the account."  *Id*.

The dates requested are outside the bounds of the dates the Select Committee claims to be seeking information within.  Additionally, information is requested that goes well beyond start and end dates of service and well beyond the proffered time frames given by the Select Committee of the three-month period surrounding January 6, 2021. See, Defs.' Mot. p.14 (Defendant's assertion they seek only a "three-month period involving the run-up to January 6th and its aftermath.")  In fact, it is obvious that the Select Committee seeks to create the appearance that their Subpoena has

---

5 Select Committee Subpoena Schedule, February 1, 2022.

## SCHEDULE

In accordance with the attached definitions and instructions, you, Verizon, are hereby required to produce the documents and records ("Records") listed in Section A, below, **for the time period November 1, 2020, to January 31, 2021**, concerning the phone numbers listed in Section B, below (the "Phone Numbers"). This schedule does not call for the production of the content of any communications or location information.

**Please email the records to SELECT_CLERKS@MAIL.HOUSE.GOV** or, in the alternative, send them by mail to 1540A Longworth House Office Building, Washington, DC 20515, care of Jacob Nelson, Select Committee to Investigate the January 6th Attack on the U.S. Capitol.

**Section A – Records to Be Produced for Each Phone Number**

1.  Subscriber Information: All subscriber information for the Phone Number, including:

    a.  Name, subscriber name, physical address, billing address, e-mail address, and any other address and contact information;

    b.  All authorized users on the associated account;

    c.  All phone numbers associated with the account;

    d.  Length of service (including start date) and types of service utilized;

    e.  Telephone or instrument numbers (including MAC addresses), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN") Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI") associated with the accounts;

    f.  Activation date and termination date of each device associated with the account;

    g.  Any and all number and/or account number changes prior to and after the account was activated;

    h.  Other subscriber numbers or identities (including temporarily assigned network addresses and registration Internet Protocol ("IP") addresses); and

2.  Connection Records and Records of Session Times and Durations: All call, message (SMS & MMS), Internet Protocol ("IP"), and data-connection detail records associated with the Phone Numbers, including all phone numbers, IP addresses, or devices that communicated with the Phone Number via delivered and undelivered inbound, outbound, and routed calls, messages, voicemail, and data connections.

some boundaries to it but in procedure of complying with the Subpoena, it is demanded that any and all number and/or account number changes prior to and after the account was activated be provided.  The requests demanded in the Schedule cannot be reconciled with the dates of November 1, 2020, through January 31, 2021.

Even if the Subpoena was above board facially, the Defendants fail to articulate the connection between the information sought and the link to how it furthers the Select Committee's goal to "fully understand, and recommend measures to prevent a recurrence of, the events of January 6th.  *See*. Defs.'Mot. at p.1.  Government entities cannot arbitrarily seek private citizen data.  "Government entities are prohibited from using Rule 45 civil discovery subpoenas to circumvent the Privacy Act's protections. *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp.2d 606, 611 (E.D. VA. 2008) (Referring to 18 U.S.C.A. § 2701).

### iii.    THE SELECT COMMITTEE DOES NOT POSSESS THE POWER IT PURPORTS TO HAVE

The Select Committee does not operate as agreed upon by the majority of House members of whom passed H. Res. 503.  To be sure, the Constitution of the United States confers power upon the legislative branch to make, change or eliminate laws.  The power is unique from the other branches.  Additionally, the Select Committee correctly recites the Rule-Making Clause of the Constitution. Defs.' Mot. p.6.  However, the Rulemaking Clause is not barred from judicial interpretation. *See United States v. Rostenkowski*, 59 F.3d 1291, 1305 (D.C. Cir.), opinion supplemented on denial of reh'g, 68 F.3d 489 (D.C. Cir. 1995).  The court stated, "[I]t has long been settled …that rules of Congress and its committees are judicially cognizable." *Id*.  (A premise far from the belief the Select Committee relays that action by this Court would violate the separation of powers principals).

Further, the House of Representatives, under the Rule-Making Clause, may determine the Rules of its Proceedings. U.S. Const., Art. 1 § 5, cl. 2.  The house did determine the Rules of its proceedings when it passed H. Res. 503.  H. Res. 503 laid out further Rules.  Included in those Rules was the requirement that the Speaker appoint 13 Members to the Select Committee 5 of whom shall be appointed after consultation with the minority leader.  H. Res. 503 § 2(a).  The Rules also state, "any vacancy in the Select Committee shall be filled in the same manner as the original appointment." Id § 2(c).

The Select Committee was never, from its inception, formed according to the Rules establishing the Select Committee.  The Select Committee has only ever had nine members.  Four short of the number indicated in the rules.  Indeed, Defs.' Mot. makes a point that there is no rule that all thirteen members be appointed in order for the Select Committee to function.  Defs.' Mot. p.13-14.  And to this point Mrs. Gionet would point the Defendants to the H. Res. 503 § 2(a). Rule § 2(a) provides that 13 members to the Select Committee be appointed. Defendant's are unable to direct this Court to a rule in H. Res. 503 that indicates less than the specified number of members is sufficient.  If there is a rule or precedent, then the Defendants argue it must apply.  But in the absence of a rule then the Defendants point to there being no rule and the argument is that the absence of a rule must apply.  Very plainly, there is a rule. H. Res. 503 was specific.  It doesn't call for all members of the House, neither does it call for less than thirteen members.  If the Defendants argument is that less than thirteen members is sufficient then the logical antithesis is that all members of the House must be present for the Select Committee to function properly.

Defendant's argument fails.  Thirteen was the magic number chosen by those who voted to pass the Resolution.  The House Committee on Rules placed the Rules into the House Resolution when creating the structure for the Select Committee to function.  Additionally, the Defendants do not

cite a Rule that indicates that the rule to appoint thirteen members was not correct or required for the Select Committee to function.  They cannot do so, because such a Rule does not exist.

There need not be a request, nor is there a request from Mrs. Gionet for this Court to interpret the Rules.  Simply, the Rules are as H. Res. 503 has laid out.  This Court does have the judicial authority to determine that the Rules have not been followed by those of whom have made the Rules.  *Rostenkowski* at 1305.  This Court must give great weight to the present construction of the rules set forth in H. Res. 503.  *U.S. v. Smith*, 52 S.Ct. 475, 478 (1932).  The present construction sets forth a requirement for thirteen members.

### iv.    MS. GIONET WILL SUFFER A VIOLATION OF HER FIRST AMENDMENT RIGHTS

The Select Committee does not operate for the outward stated reasons of its existence.  First, H. Res 503 § 3(1) indicates that the Select Committee's purpose is to investigate and report …relating to the January 6, 2021, domestic terrorist attack on the Capitol.   There was never a terrorist attack on the Capitol.  Not a single participant of the protests that day was charged with terrorism.  Mr. Gionet was also not charged with being a terrorist. The unstated purpose of the Select Committee is to harass any citizen who is not a democrat.  If the Select Committee operated under the premise they allege to operate for, then they might have formed an inquest to discover why the national guard was turned down from appearing on January 6, 2021.[6]  Further, Ray Epps, a member of the Oathkeepers in Arizona, was on video trying to convince a crowd of people that they should all go into the Capitol.  Ray Epps did this on January 5th, 2021.  Mr. Gionet filmed

---

[6] Ex-Capitol Police Chief Says Requests For National Guard Denied 6 Times In Riots. By Jaclyn Diaz. NPR. https://www.npr.org/2021/01/11/955548910/ex-capitol-police-chief-rebuffs-claims-national-guard-was-never-called-during-ri

Ray Epps making such comments and ended the conversation by calling him a "Fed" and disagreeing with him that anyone should enter the Capitol.  The following day, Ray Epps was again on video, this time at the front of the barricades at the Capitol.  It appeared he was going to make good on his plea to the crowd the night before.[789]  He was one of the first to push past the barricades.  It is all on video, yet Mr. Epps has never been prosecuted.  If the Select Committee is interested in underlying causes, it seems like there is no better person to investigate then Ray Epps.  However, Ray Epps has never been contacted by the Select Committee to our knowledge.

Further, a bipartisan committee would have shielded the Select Committee from any allegations such as those made here because the American people would know that all sides of the day of January 6, 2021, would be being looked into and investigated.  The partisan nature of the Select Committee prevents trust in the nature of the purpose for the Select Committees actions.  Members of the Select Committee who identified as Republican fell far outside the normal of the Republican party as evidenced by the downfall of Elizabeth Cheney.[10]  Likewise, Adam Kinzinger consistently bashes members of the party he claims to represent.[11]  Neither of the two Republican

---

[7] Meet Ray Epps: The Fed-Protected Provocateur Who Appears To Have Led The Very First 1/6 Attack On The U.S. Capitol, By Darren Beattie, October 25, 2021, Revolver News, https://www.revolver.news/2021/10/meet-ray-epps-the-fed-protected-provocateur-who-appears-to-have-led-the-very-first-1-6-attack-on-the-u-s-capitol/

[8] Meet Ray Epps, Part 2: Damning New Details Emerge Exposing Massive Web Of Unindicted Operator At The Heart Of January 6, by Darren Beattie, December 18, 2021, Revolver News, https://www.revolver.news/2021/12/damning-new-details-massive-web-unindicted-operators-january-6/

[9] Inside the Capitol Riot: An Exclusive Video Investigation, by unknown, June 30, 2021, New York Times, https://archive.ph/eDlzs#selection-423.0-423.57.

[10] Cheney Booted from Republican leadership spot.  By Melanie Zanona and Olivia Beavers.  Politico. https://www.politico.com/news/2021/05/12/liz-cheney-removed-leadership-position-487522.

[11] Rep. Adam Kinzinger slams House Minority Leader Kevin McCarthy's leadership in GOP, says somehow 'the crueler you are, the more likely you are to win a primary.' By Pocharapon

members will remain in Congress and thereby within a couple months of this pleading will no longer be members of the Select Committee or Congress.[12][13]

While it may not be written as a Select Committee Rule, it is evident that the purpose of the Select Committee is to harass and intimidate those deemed to be political enemies. The Select Committee relies on *Eastland v. U.S. Servicemen's Fund* to foreclose on Ms. Gionet's First Amendment Rights, however, *Eastland* makes clear that the immunity granted in the Speech and Debate Clause of the Constitution only applies to essential legislative actions. *Eastland v. U.S. Serivcemen's Fund*, 421 U.S. 491, 508 (1975). The purpose of the Select Committee as laid out in the resolution and in relevant part are to investigate, examine evidence, and compare findings from other entities. H. Res. 503 § 3(1-3). The Select Committee was not formed to recommend legislation or form policies that will later be the basis for legislation. If so, it would have been clearly delineated in the resolution as a purpose for the existence of the Select Committee. It is not. Therefore, the actions of the Select Committee do not fall within "essential legislative actions."

Defendants argue that Mr. Gionet has "extensive involvement in far-right social media." Defs.' Mot. p.14. Defendants fail to explain what "extensive involvement in far-right social media" means or how extensive involvement in far-right social media advances the purpose of the Select Committee. Defendants also argue that they are investigating "right-wing extremist networks" as

---

Neammanee. Aug. 8, 2022. https://www.insider.com/kinzinger-slams-house-minority-leader-kevin-mccarthys-leadership-2022-8

[12] Cheney loses primary after becoming face of GOP opposition to Trump. By Olivia Beavers and Zach Montellaro. Politico. Aug. 16, 2022.,
https://www.politico.com/news/2022/08/16/wyoming-alaska-primary-results-2022-00052216

[13] Kinzinger retiring from Congress, vows 'broader fight nationwide' against Trumpism. By Ally Mutnick, Olivia Beavers, and Quint Forgey. Politico. Oct. 29, 2021.
https://www.politico.com/news/2021/10/29/rep-adam-kinzinger-wont-seek-reelection-next-year-517599

if that is a real thing this Court must take judicial notice of.  Again, they fail to provide any semblance of a definition of what a right-wing extremist network is.  Without any defining terms we can only guess that right-wing extremist networks mean anyone who votes Republican. Defendants freely admit they seek call detail records relating to phone numbers associated with Mr. Gionet.  Defs.' Mot. p.14.  Mrs. Gionet has a privacy interest in phone numbers and information related to her Verizon Communications account.  Her freedom to associate is being targeted by the purposely harassing nature of the Select Committee and the subpoena issued.

      The Defendants allege that an impounded phone can still receive incoming communications[14] without any shred of imputed knowledge or information that the phone information they seek did receive such calls.  The Defendants requests further demonstrates the fishing expedition nature of the subpoena.  The likelihood that the FBI left the phone(s) out of a faraday cage[15] is not great or even fathomable.  Moreover, the Select Committee can seek the information they note from the FBI rather than intruding upon Mrs. Gionet's privacy rights.  The First Amendment protects political association as well as political expression.  *Buckley v. Valeo*, 424 U.S. 1, 15 (1976).  The "group association" that the Defendant's freely admits to seeking in the call records is subject to even greater scrutiny.  *Id.* (effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association).  "Subsequent decisions have made clear that the First and Fourteenth Amendments guarantee 'freedom to associate with others for the common advancement of political beliefs and

---

[14] Defs.' Mot. n.23.
[15] Faraday Cage: What Is It? How Does It Work, Gamry Instruments, https://www.gamry.com/application-notes/instrumentation/faraday-cage/.

ideas,' a freedom that encompasses 'the right to associate with the political party of one's choice.' *Id*.

Therefore, it is undeniable the Supreme Court protects ones First Amendment rights to belong to have involvement in "far-right social media."  Even greater distinction may be given to the right to be involved in "right-wing extremist networks" and those connections, if any shall be protected as would a person's right to belong to "far-left extremist networks."  Defendants allege they are ensuring the "free functioning of our nation institutions" however, that is not a scope or purpose as enumerated in the H. Res. 503.  Further, Defendant's provide no examples or argument as to any instance in which our national institutions are not free functioning or how that relates the records they seek. Defs.' Mot. p.15.

## v.   FEDERAL LAW PREVENTS DISCLOSURE OF CONTENTS SUBPOENA SEEKS

Under the Stored Communications Act, 18 U.S.C.A. §§ 2701 *et seq*., disclosure of the information sought from the Defendant's subpoena is prohibited.  *See* 18 U.S.C.A § 2702(c)(4). The Defendants have not demonstrated an emergency involving danger of death or serious physical injury.  Under U.S.C.A. § 2703 a governmental entity may only obtain access to non-content records if a warrant is obtained or an administrative subpoena is issued that is authorized by a Federal or State statute, or the subpoena is a Federal grand jury subpoena.  18 U.S.C.A. § 2703(c)(A) and (c)(E)(2).

Here, none of the above exceptions apply to the specific situation presently before us.  The Defendants have not obtained a warrant.  Additionally, no Federal statute exists to authorize the subpoena Defendants seek to use.  Finally, Defendants subpoena is not derived from a Federal grand jury or trial.  Therefore, none of the exceptions apply and the subpoena issued is invalid to

gain the requested electronically stored information Defendants seek.  Defendants concede that no exception applies and that Congress was not included in the codes exceptions.  However, Defendants make a colorful argument that because the Select Committee is not a governmental entity then it must be a person in accordance with 18 U.S.C.A. § 2702(c)(6).

Here, the title for 18 U.S.C.A § 2702(c)(6) is "Voluntary disclosure of customer communications or records."  All subsections of § 2702 are allowed disclosure under the premise that the disclosures are being made voluntarily by the subscriber.  In contrast § 2703 is titled, "Required disclosure of customer communications and records."  It is clear that Congress contemplated when records may be release voluntarily and the procedures for doing so.  Congress also foresaw the need for procedures when records would be required to be disclosed.

Here, clearly, as evidenced by this lawsuit, the records are not voluntarily being submitted to Congress.  Defendants concede that 18 U.S.C.A. § 2703 does not apply to them.  Therefore, the statute, as enacted by Congress, provides the final directions as to the validity of the Defendants ability to seek the information they desire.  The Statute prohibits the Defendant's from collecting such information.

## IV.    <u>CONCLUSION</u>

Wherefore the foregoing argument, authority and reasoning, Mrs. Gionet request this Court to deny the Defendant's motion to dismiss and grant declaratory relief as requested in the Plaintiff's complaint.

Respectfully submitted,


/s/ Zachary J. Thornley
Pro Hac Vice Admission
Lead Counsel

Zachary J. Thornley, AZ 032363
Thornley Law Firm, P.C.
18441 N. 25th Ave., Suite 103
Phoenix, AZ 85023
Phone: (602) 686-5223
Fax:    (928) 433-5909
Courts@ThornleyLawFirm.com
Attorney For Plaintiff

Dated September 30, 2022